SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
**STEVEN T. MYGRANT, OSB # 031293**
Assistant United States Attorney
Steven.Mygrant@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:26-mj-00010 |
| **v.** | |
| **KASSIDY LEE WILLIAMS**, | **GOVERNMENT'S MOTION FOR PRETRIAL DETENTION** |
| **Defendant.** | |

The government asks the Court to detain the defendant pending arraignment and trial.

The defendant, a Grant County, Oregon fentanyl dealer, has been linked to four overdoses – two

fatal and two non-fatal – and she has a history of drug use, misdemeanor criminal convictions,

and failing to appear for court. She is a danger to the community and a risk on non-appearance

and no condition or combination of conditions can acceptably mitigate those risks.

**I.      Summary of the Case.**

The defendant is currently in custody and has been charged in a criminal complaint with

the Distribution and Possession with Intent to Distribute Fentanyl, a Schedule II controlled

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION                    Page 1**

substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). On January 22, 2026, she is scheduled to make her initial appearance on the criminal complaint. The maximum sentence a Court may impose on the current charges is a term of 20 years' imprisonment, fine of $1,000,000, and at least three years of supervised release. The charges trigger a rebuttable presumption of pretrial detention as both a risk of non-appearance and danger to the community.

The charges stem from the defendant's ongoing distribution of fentanyl in Grant County, Oregon. This investigation started following the deaths of two individuals from apparent drug overdoses. In one week between December 4, 2025, and December 10, 2025, two individuals in Grant County, Oregon, both believed to have been supplied with fentanyl by the defendant, died of accidental deaths that law enforcement believes were the results of drug overdoses. Both individuals (Adult Victims 1 and 2) were found in the presence of drug paraphernalia and the cause of death, while suspected to be the result of a drug overdose, is still under investigation and toxicology results are pending. At both scenes a small, pink, Ziploc type baggies were found in the vicinity of the bodies, which was believed to have contained the fentanyl defendant sold to the victims. On January 20, 2026, similar baggies were found during a later search of defendant's residence.

Following the death of Adult Victim 1, on December 5, 2025, the defendant sent the following message, that was posted on Facebook, soliciting additional fentanyl customers:

///

///

///



A number of individuals forwarded this post to the Grant County Sheriff, who alerted the Grant County District Attorney's Office, who then reached out to the U.S. Attorney's Office, FBI, and Oregon State Police to assist in the investigation.

On January 17, 2026, another adult (Adult Victim 3) suffered, but survived, a drug overdose after consuming fentanyl supplied by the defendant. Following the drug overdose of Adult Victim 3, on January 18, 2026, law enforcement sought and obtained federal search warrants for two residences in Grant County, as well as for the defendant. On January 20, 2026, those federal warrants were executed. During the execution of the warrants, Investigators learned about another non-fatal drug overdose (Adult Victim 4) that occurred on January 17, 2026, after the person bought and consumed fentanyl supplied by the defendant. On January 20, 2026, the defendant was arrested on federal

charges and a criminal complaint was sought. On January 21, 2026, the Court signed the current criminal complaint and arrest warrant for the defendant.

Given the nature of the case and her criminal history, the risks of releasing the defendant back into the community at this junction are just too high. The details of the charges against the defendant are outlined within the criminal complaint.

## II. Applicable Law.

### A. Rules of Evidence Do Not Apply at Detention Hearing.

The Federal Rules of Evidence do not apply in detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

### B. There is a Rebuttable Presumption of Detention.

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the

appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). The criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant **might** engage in criminal activity to the detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union. **The committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus,

> **because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism**.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id*. Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance and has no correlation with the question of the safety of the community.").

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1)     the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person, including –

     (A)     the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

     (B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

## III.     Factors Supporting Detention.

The defendant was selling fentanyl, an extremely addictive, destructive, and deadly poison that kills people and contributes to criminal activity within the community. Additionally, the defendant comes before the Court with a history of failing to appear for court hearings. The government ask that the Court detain the defendant pending trial as both a danger to the community and a risk of nonappearance.

///

**A.    Nature and Circumstances of the Offense.**

The defendant's crimes are extremely serious – she was selling fentanyl and she is implicated in four apparent drug overdoses – two fatal and two non-fatal.  Illicit fentanyl is extremely addictive, destructive, and deadly.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

Drug dealers like the defendant are exactly the people Congress warned us about and why they created the initial presumption of detention in these cases.  Drug dealers historically are prone to go back to dealing when they are released from custody in their efforts to continue making money.  Here, following the initial overdose of Adult Victim 1 the defendant did not stop selling fentanyl but rather used that death in a twisted way to boast about the potency of the fentanyl – all in an effort to sell more of it.  There is only one place to prevent the defendant from dealing fentanyl again – despite any pleas she may make to the Court to the contrary – and that is in federal custody.

**B.    Weight of the Evidence.**

The proof against the defendant is summarized above and in the affidavit in support of the criminal complaint.  The case against the defendant is extremely strong and she should be detained.

///

## C.    History and Characteristics of the Defendant.

The history and characteristics of the defendant also warrants her continued detention as both a risk of non-appearance and as a danger to the community.  In addition to selling fentanyl, according to the Grant County District Attorney's Office, the defendant has a lengthy criminal history involving 12 prior misdemeanor convictions, which includes multiple failures to appear (highlighted below).

The defendant has the following misdemeanor convictions:

| Date: | Case No. | Jurisdiction | Crime | Non-Person Crime | Person Crime |
|---|---|---|---|---|---|
| 2019 | 19CR40514 | Grant County | Trespass 1 | X | |
| 2000 | OR012013J | Grant County | Fail to Appear (FTA) 2 | X | |
| 2022 | 22M000877 | Grant County | FTA 2 | X | |
| 2022 | 22M000878 | Grant County | FTA 2 | X | |
| 2022 | 22M000879 | Grant County | FTA 2 | X | |
| 2022 | 22M000474 | Grant County | FTA 2 | X | |
| 2022 | 22M000475 | Grant County | FTA 2 | X | |
| 2022 | 22M000495 | Grant County | Theft 3 | X | |
| 2024 | 24CR29207 | Grant County | Trespass 1 | X | |
| 2024 | 24CR39824 | Grant County | Assault 4 | | X |
| 2024 | 24CR39824 | Grant County | Crim. Mis 3 | X | |
| 2024 | 24CR39820 | Grant County | Unlawful Firearm Transfer | X | |

The defendant has the following violations:

| Date: | Case No. | Jurisdiction | Crime | Non-Person Crime | Person |
|---|---|---|---|---|---|
| 2025 | 25VI132314 | Grant County | FTA 2 | X | |
| 2025 | 25O000126 | Grant Justice | Trespass 2 | X | |

///

The defendant is currently charged in Union County, Oregon, in Case No. 25CR72414, for Burglary in the First Degree and Theft in the Third Degree, which is alleged to have been committed on December 31, 2025. The defendant also has a July 25, 2000, mental health commitment hold.

To release the defendant pending trial simply invites her to continue causing mayhem in Grant County. She should be detained.

**D.      Nature and Seriousness of the Danger to the Community.**

When we ask what is the nature and seriousness of the danger that the defendant would pose to the community if she was released, we are talking about the danger that she will go back to what she was doing – which was dealing fentanyl. Given the presumption of detention that comes along with the charges, Congress has recognized that drug dealers like the defendant pose a serious risk to the community and that there is a substantial risk that they will return to dealing drugs, even while on supervision. Given the added risks posed by the distribution of illicit fentanyl – even in small amounts as amply demonstrated by this investigation – we cannot bear that risk. If the defendant was released, there is no condition or combination of conditions that this Court can impose that will sufficiently mitigate the risk that she will go back to selling fentanyl. The defendant should be detained.

**Conclusion**

For the reasons set forth herein, we respectfully request that the Court detain the defendant and find she poses an unacceptable risk of non-appearance at future court hearings and that she is a danger to the community. We ask the Court to find that:

///

///

- The charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendant as required.

- The defendant has not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendant's fentanyl dealing, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendant were released.

- Due to the weight of the evidence and the defendant's personal history and characteristics, including her multiple failures to appear and the potential penalties she is facing on the current charges, no condition or combination of conditions will reasonably assure the appearance of the defendant at future court hearings as required if she was released from custody.

Based upon the above findings, the defendant should be detained pending trial.

Dated: January 22, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney

/s/ *Steven T. Mygrant*

STEVEN T. MYGRANT, OSB #031293
Assistant United States Attorney